1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| JUAN JOSE JAIME, | ) | 1:09-cv-00397 GSA |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

18

19

## **BACKGROUND**

20

   Plaintiff Juan Jose Jaime ("Plaintiff") seeks judicial review of a final decision of the

21

Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

22

supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is

23

currently before the Court on the parties' briefs, which were submitted, without oral argument, to

24

the Honorable Gary S. Austin, United States Magistrate Judge.[1]

25

26

27

28

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 9 & 11.

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on or about October 26, 2005, alleging disability beginning May 2, 2003.  AR 85-91.  His application was denied initially (AR 25-29) and on reconsideration (AR 31-36), thereafter Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 39.  ALJ Christopher Larsen held a hearing on February 28, 2008 (AR 440-470), and issued an order denying benefits on April 12, 2008.  AR 5-13.  Plaintiff requested a review of the decision (AR 81-82) and on January 6, 2009, the Appeals Council denied review.  AR 1-4.

### Hearing Testimony

ALJ Larsen held a hearing on February 28, 2008, in Fresno, California.  Plaintiff appeared and testified.  Plaintiff was represented by attorney Sengthiene Bosavanh.  Vocational Expert ("VE") Thomas Dachelet also testified.  AR 440-470.

Plaintiff was born January 27, 1956.  AR 446.  He is 5' 8", weighs 200 pounds, which is his normal weight, and is right-handed.  AR 447.  He is not married.  AR 446.  He lives with his sister and brother-in-law.  AR 447.  Plaintiff has completed the ninth grade and can read and write in English.  AR 448.  He has not obtained a GED.  AR 449.  Plaintiff no longer has a valid driver's license, but did have one in 2001.  He takes the bus to get around more than three to five times per week.  AR 448.

Plaintiff was last employed as a stacker at Foster Farms in 2003.  He stacked boxes and baskets that weighed between 40 and 70 pounds each, "pretty much all day" for approximately one and a half months.  AR 450-451.  Plaintiff stopped working at Foster Farms because he was injured.  He cannot return to that job because of the injuries to his back and legs.  AR 450.  Before that, Plaintiff did construction work for Continental Agency, working there for approximately one and a half years before being laid off.  AR 451.

When asked what is keeping Plaintiff from working, he cited pain in his back, neck, and legs, and diabetes.  AR 452.  The pain is constant but can get worse when he sits or stands for a long period of time.  AR 452-453.  Plaintiff is taking medication, which alleviates some of the

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

pain.  AR 452.  Plaintiff's doctor told him to do exercises but he does not do them because they
are "kind of hard."  AR 453.  Dr. Chauhan[3] prescribed a cane for Plaintiff but he forgot it on a
bus approximately five months ago.  He did not ask his doctor for another one because he
thought the doctor would get mad.  AR 453-454.  Plaintiff was prescribed Naprosyn for
inflammation in his back but he could not take it because it made him feel dizzy and anxious.
AR 454.

Plaintiff can stand for 30 minutes before needing to take a break.  AR 455.  He can stand
for approximately two hours total and sit for approximately three hours total in an eight-hour day.
AR 455-456.  Plaintiff must lie down or put his feet up approximately every 30 minutes, for
approximately three hours total each day.  AR 456-457.  He can lift 10 to 15 pounds with his
hands, but probably only once each day.  AR 457.

Plaintiff has migraine headaches that keep him from working and make it difficult to
concentrate.  AR 458-459.  These headaches occur all the time, but he does not take medication
for them.  AR 459.  Once Plaintiff's ear started bleeding from the headaches.  AR 459.  He still
gets a pain in his ear approximately every two days.  AR 464.  Plaintiff experiences anxiety
attacks where he becomes weak and sweats.  These attacks have occurred four or five times in
the last one and a half years.  AR 459-460.  Plaintiff can concentrate for 10 to 20 minutes before
losing his attention.  AR 460-461.  Stress is a problem for him.  AR 461.  Plaintiff indicated that
he used to have friends before he stopped working.  AR 462.

Plaintiff does not cook; his sister does the cooking.  He washes his own dishes.  AR 462.
Plaintiff has less energy now than before he got injured.  He used to enjoy fishing and watching
television but does not fish any longer and cannot watch more than 20 minutes of television.  AR
463.  Plaintiff also has problems sleeping, averaging three to four hours per night.  AR 464.

VE Dachelet testified that Plaintiff's previous work as a farm laborer in 1998 and 1999 is
medium, unskilled.  Plaintiff's work at Foster Farms is medium, unskilled.  Construction work is
very heavy, unskilled.  AR 465.

---

[3] The transcript of the hearing reflects "Dr. Shahan" (AR 454), however the cane was prescribed by Sanjay
J. Chauhan, M.D.  AR 254.

1    VE Dachelet was asked to consider a hypothetical worker of Plaintiff's age, education,

2    and work experience, who can lift and carry 20 pounds occasionally and 10 pounds frequently,

3    stand and walk a total of six hours and sit a total of six hours in an eight-hour day, occasionally

4    climb, stoop, kneel, crouch, and crawl, and frequently balance.  VE Dachelet indicated that this

5    hypothetical individual could not perform any of Plaintiff's past work, but  could perform the

6    entire world of sedentary and light, unskilled jobs.  AR 466.  Examples of light unskilled jobs

7    are: bagger, 31,756 jobs in California; and garment sorter, 33, 983 jobs in California.  A total of

8    835, 661 jobs exist in California at the light, unskilled level.  AR 467.

9    VE Dachelet was asked to consider a second hypothetical worker of Plaintiff's age,

10   education, and work experience, who can stand and walk a total of two hours and sit a total of

11   three hours in an eight-hour day.  VE Dachelet indicated that such an individual, in the absence

12   of any other limitations, could not perform Plaintiff's past work or any other work found in the

13   national economy.  AR 467-468.

14   VE Dachelet was asked to consider a third hypothetical worker of Plaintiff's age,

15   education, and work experience, who cannot maintain attention and concentration consistently

16   throughout an eight-hour workday due to any reason.  VE Dachelet indicated that all work is

17   closed to such an individual.  AR 468.

18   VE Dachelet was asked to consider a fourth hypothetical worker, as posed by Plaintiff's

19   counsel, who can only move his neck 50 percent of the time because of pain.  VE Dachelet

20   indicated that all work is closed to such an individual.  AR 468.

21   **Medical Record**

22   The entire medical record was reviewed by the Court.  A summary of the reports and

23   treatment notes is provided below.

24            ***Charles O. Lewis, M.D.***

25   On May 29, 2003, Plaintiff was seen by Charles O. Lewis, M.D. at Concentra Medical

26   Centers for a follow-up appointment after injury to his back while lifting boxes on May 2, 2003.

27   Dr. Lewis noted that lumbar strain is improved, recommended to continue physical therapy, and

28   advised no lifting over 25 pounds.  AR 186-188.

4

1

### Robert L. Jones, D.C.

2   On August 19, 2003, Plaintiff was seen by Robert L. Jones, D.C. at Fresno Spine & Sport

3   for complaints of back pain and headaches.  Dr. Jones' exam indicated tenderness and decreased

4   range of motion at the cervical and lumbar spines, and tenderness with no decreased range of

5   motion at the shoulders.  Dr. Jones diagnosed cephalgia, cervical and lumbar strain/myofibrosis,

6   and segmental dysfunction of the cervical and lumbar spines.  Treatment included ultrasound,

7   electrical stimulation, intersegmental traction, myofascial release, neuromuscular re-education,

8   therapeutic exercise, and chiropractic manipulation.  AR 166-170.

9   On September 26, 2003, Dr. Jones issued a follow-up report, which stated that Plaintiff

10  feels better after his therapy, is able to get a good night's sleep, and is able to perform daily living

11  activities with more ease.  Dr. Jones also stated that Plaintiff's pain levels are steadily decreasing,

12  his ranges of motion are increasing, and he would benefit from a work conditioning program.

13  AR 157-158.

14  ### Radiological Imaging

15  On July 20, 2003, Plaintiff underwent an MRI of his cervical and lumbar spine at

16  Executive Imaging due to complaints of pain in his neck and lower back.  The cervical spine

17  MRI showed moderate protrusion of the discs and narrowing of the neural foramina at multiple

18  levels, and disk desiccation and mild central stenosis at the C5-6 level.  AR 151-153.  The

19  lumbar spine MRI showed central stenosis, disk protrusion, and narrowing of the neural foramina

20  at multiple levels, and disk desiccation at the L2-L3 level.  AR 154-156.

21  On November 6, 2004, Plaintiff underwent an MRI of his cervical and lumbar spine at

22  Advanced Radiology.  The cervical spine MRI revealed disc protrusions at several levels and disc

23  bulging at level C6-7.  AR 257-259.  The lumbar spine MRI revealed disc protrusions and

24  annular tears at levels L4-5 and L5-S1, and disc bulging at level L3-4.  AR 260-263.

25  On March 3, 2007, Plaintiff underwent an MRI of his lumbar spine at Advanced

26  Radiology.  The MRI revealed congenital stenosis of the thecal sac and disk bulging, neural

27  foraminal narrowing, and annular tears at several levels.  AR 364-367.

28

1          *Sanjay J. Chauhan. M.D.*

2          On July 18, 2003, neurologist Sanjay J. Chauhan, M.D. performed an initial neurological

3    evaluation of the Plaintiff.  Plaintiff complained of neck pain and lower back pain.  Dr. Chauhan

4    diagnosed Plaintiff as having lumbar strain with radiculopathy and cervical strain.  Prescriptions

5    were given for Soma and Vicodin.  Plaintiff was considered temporarily totally disabled until

6    August 27, 2003.  AR 323-330.

7          On July 21, 2003, an electrodiagnostic study was negative for lumbar radiculopathy.  AR

8    319-322.

9          On February 10, 2004, Dr. Chauhan cleared Plaintiff to take GED classes at adult school.

10   AR 293.

11         On July 28, 2004, Dr. Chauhan cleared Plaintiff to participate in a computerized

12   embroidery training program.  AR 277.

13         On August 2, 2004, Plaintiff was seen for complaints of neck and back pain and as a

14   follow-up to an emergency room visit the previous week for an anxiety attack.  The neurological

15   exam was normal.  Plaintiff was diagnosed with lumbar strain with radiculopathy and cervical

16   strain.  He was put on temporary total disability until September 16, 2004.  AR 270-276.

17         On September 15, 2004, Plaintiff was seen for neck and back pain and an anxiety attack

18   due to chronic pain.  He was prescribed Elavil and put on temporary total disability until October

19   15, 2004.  AR 270-271.

20         On November 29, 2004, Plaintiff was seen for complaints of lower back pain and

21   increasing weakness in his right leg.  Dr. Chauhan referred him to Dr. Levy, a neurosurgeon.  Dr.

22   Chauhan prescribed Lodine, Flexeril, and Darvocet.  He also prescribed a cane.  AR 254.

23         On January 5, 2005, Plaintiff was seen for pain in his lower back and right leg.  Dr.

24   Chauhan noted that Plaintiff does not use his cane very much because he is embarrassed to use it.

25   AR 252.  Plaintiff was placed on temporary total disability until February 20, 2005.  AR 252-253.

26         On March 17, 2005, Dr. Chauhan issued a "Treating Physician's Final Report."  AR 239-

27   248.  Plaintiff's complaints included lower back pain radiating to the right lower extremity and

28   neck pain.  AR 242.  The report notes Plaintiff's gait is slower than expected and he had trouble

getting on and off the examination table and in and out of the chair due to lower back pain.  AR

243.  The report notes objective findings of MRI abnormalities of the lumbar and cervical spines,

decreased range of motion in the lumbar spine, and paralumbar and paracervical muscle spasms.

AR 244-245.  The report limits Plaintiff to light work and precludes him from heavy lifting and

repetitive neck flexion, extension, and rotation.  AR 245-246.  Dr. Chauhan prescribed Darvocet,

Flexeril, and Lodine.  Dr. Chauhan also advised Plaintiff that stationary bicycling was

appropriate.  AR 247.

On August 24, 2005, Dr. Chauhan provided a supplemental report, which indicates that

the position of "culinary arts/chef" is an appropriate vocational rehabilitation goal for the

Plaintiff.  AR 235-236.  The position of "culinary arts/chef" requires continuous standing and

walking, frequent handling and grasping, and occasional bending, stooping, reaching, pushing,

and pulling.  It also requires occasional to frequent lifting or carrying of approximately 25

pounds.  AR 235.

On July 25, 2007, Dr. Chauhan completed a primary treating physician's progress report

after a follow-up examination of Plaintiff on July 24, 2007.  Plaintiff's complaints at the

examination consisted of low back pain with numbness in the left lower extremity, which

increases with prolonged sitting.  The low back pain radiates to both lower extremities.  Plaintiff

has difficulty performing activities of daily living such as bending, driving, sitting, and sleeping.

AR 359.

The neurological examination noted reduced bilateral hip flexion due to pain, otherwise

normal muscle strength, slow and antalgic gait due to low back pain, and slowness in transition

from sitting to standing position.  AR 359.  An examination of the cervical spine revealed slight

spasm in the paracervical muscles and range of motion between 60 percent and 90 percent of

normal.  An examination of the lumbar spine revealed slight to moderate muscle spasm and

range of motion between 60 percent and 80 percent of normal.  AR 359-360.

Dr. Chauhan's diagnosis included lumbar radiculopathy, left greater than right.  The

March 3, 2007 MRI was abnormal and appeared worse than the June 20, 2003 MRI.  The more

recent MRI showed mild to moderate bilateral neural foramina narrowing at L4-5 with 4-5

millimeter posterior disc bulge and mild to moderate right neural foramina narrowing due to 5-6 millimeter posterior disc bulge at L5-S1.  The diagnosis also included cervical strain with a prior MRI showing a two millimeter bulge at C3-4, 2.5 millimeter bulge with central stenosis at C5-6, and moderate narrowing of both neural foramina at C6-7 with "recent clinical/subjective spontaneous worsening."  There was no new injury.  AR 360-361.

Dr. Chauhan's recommendations included: (1) neurosurgery consultation for the lower back due to clear worsening of the recent MRI; (2) MRI scan of the cervical spine to rule out deterioration of the disc due to clinical worsening; (3) Prescriptions for Flexeril, Naproxen, Zantac, and Vicodin ES; (4) temporary total disability until September 24, 2007 due to spontaneous aggravation; and (5) follow-up in six to eight weeks.  AR 361-362.

On February 6, 2008, Dr. Chauhan completed a one-page questionnaire.  He noted that Plaintiff is not precluded from sedentary work, can sit for four hours and stand or walk for three hours in an eight-hour day, does not need to lie down or elevate his legs, and does need to alternate sitting and standing/walking as needed.  The doctor indicated the objective findings of decreased range of motion in the cervical and lumbar spine form the basis of his opinion.  Dr. Chauhan further noted that Plaintiff has been disabled to this degree since May 2, 2003.  AR 435.

### *Central Valley Orthopedic and Spine Institute*

On March 16, 2004, surgeon Fabian Proano, M.D. performed a lumbar myelogram and nerve root blocks.  Dr. Proano identified disc degeneration, bulging lumbar spine, foraminal stenosis, and lumbar facet arthropathy at multiple levels.  AR 204-206.

### *Community Medical Centers*

On July 20, 2004, Plaintiff went to the emergency room at Community Medical Center in Fresno, complaining of sudden onset headache, aphasia, abdominal pain, head pain, and being hot inside.  He arrived in a wheelchair.  AR 378.  Plaintiff denied suicidal ideation, although the doctor noted that he attempted suicide by insulin overdose in December 1999.  AR 380.  The doctor noted a history of heavy alcohol consumption, 12 to 24 beers per day for over 20 years.  AR 380.  The doctor also noted that Plaintiff was depressed, that he complained of financial problems, and had been evicted from his apartment earlier that day.  AR 380.  The clinical

impression included tension headache, acute situational stress, anxiety reaction, and panic attack. AR 381. He was discharged to drive home on his own within four hours and no medications were prescribed. AR 379, 382.

### Mark Levy, M.D.

On January 27, 2005, Plaintiff was seen by Mark Levy, M.D. at Sierra Pacific Orthopaedic Center for complaints of neck and back pain. A radiographic study of the cervical spine showed very mild degenerative disc disease without obvious stenosis. A radiographic study of the lumbar spine showed mild degenerative lumbar disc disease. Dr. Levy noted no indication for surgery, but noted that Plaintiff may eventually qualify for decompressive lumbar laminectomy if his stenosis progresses over the next several years. He further noted that despite Plaintiff's complaint of pain, he has "remained quite functional," is able to "walk in and out of the office without any visible difficulty," has no difficulty rising from a chair, nor did he have difficulty walking. AR 211-213.

### William J. Previte, D.O.

On March 5, 2005, Plaintiff was examined by William J. Previte, D.O. at The Sport Institute Medical Group. Plaintiff complained of thoracolumbar strain and radiating neck pain. The examination revealed congenital stenosis, multi-level degenerative disc disease, sensory changes in the right leg, decreased flexion and extension at the lumbar spine, myofascial tenderness, and decreased range of motion at the cervical spine. The pain is characterized as frequent to constant, slight, increasing to slight to moderate upon bending, twisting, and lifting. Dr. Previte advised that Plaintiff should be precluded from very heavy work and that he has lost 25 percent of his pre-injury capacity to bend, twist, lift, carry, push, or pull. AR 214-226.

On August 4, 2006, Dr. Previte issued a supplemental report that stated Plaintiff could not return to his "usual and customary duties." The report also gave Plaintiff a 13 percent overall impairment. AR 350-353.

### Benjamin Chang, M.D.

On April 21, 2006, Benjamin Chang, M.D. at Valley Health Resources issued a summary report following an orthopedic examination of Plaintiff. Plaintiff's chief complaints were lower

back and neck pain.  AR 334.  Dr. Chang noted that Plaintiff appeared to be in no acute distress, that he walked without evidence of a limp, and that he could stand and walk on his toes and heels well without difficulty.  AR 335.

The orthopedic examination by Dr. Chang revealed reduced range of motion and tenderness in the cervical and lumbar spine.  Dr. Chang noted no evidence of joint pain, swelling, tenderness, or inflamation.  Straight leg raising and range of motion of upper and lower extremities were within normal limits.  Hand grip strength is normal.  AR 335-336.  The neurological examination was within normal limits.  Sensation and reflexes were normal.  AR 337.

Dr. Chang's diagnosis was chronic neck and back pain with mild right lower lumbar radiculitis.  AR 337.  He noted that Plaintiff has the functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours out of an eight-hour day with normal breaks, sit without restriction, and kneel, squat, and climb stairs occasionally.  Plaintiff cannot do work which requires frequent bending or heavy lifting.  AR 337-338.

### *Physical RFC Assessment*

On May 1, 2006, state agency physician Brian J. Ginsburg, M.D. completed a Physical Residual Functional Capacity ("RFC") Assessment.  The doctor determined that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for a total of about six hours per day, and sit for a total of about six hours per day.  The doctor also determined that Plaintiff could occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance.  The doctor noted no manipulative, visual, communicative, or environmental limitations.  AR 339-346.

### ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 26, 2005, and had the severe impairments of multilevel degenerative changes to the cervical and lumbar spine, and diabetes.  Nonetheless, the ALJ determined that the severe impairments did not meet or exceed one of the listed impairments.  AR 10.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the RFC to perform light work, to frequently balance, and to occasionally climb, stoop, kneel, crouch, and crawl.  AR 10.  The ALJ determined that Plaintiff was unable to perform any past relevant work.  AR 11.  The ALJ determined that Plaintiff is "closely approaching advanced age," he has a limited education and can communicate in English, and transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled.  AR 12.  The ALJ further determined that, considering the Plaintiff's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that he can perform.  AR 12.  Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act.  AR 12.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform his past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy. AR 10-12.

Here, Plaintiff argues that: (1) the ALJ erred in failing to do a function-by-function RFC assessment and to apply the substantial evidence standard; (2) the ALJ did not properly reject a treating source opinion; (3) the ALJ failed to properly evaluate Plaintiff's testimony; and (4) The ALJ did not properly develop the mental health record.

**DISCUSSION**

**A.      *Function-By-Function RFC Assessment and Substantial Evidence***

Plaintiff contends that the ALJ erred by failing to do a function-by-function RFC assessment as required by Social Security Ruling ("SSR") 96-8p. Plaintiff further contends that the ALJ erred in failing to apply the substantial evidence standard to the case and his findings.

1   Defendant replies that the ALJ properly evaluated the medical evidence in determining that

2   Plaintiff was capable of light work, with the additional limitations that he can frequently balance

3   and occasionally climb, stoop, kneel, crouch, and crawl.

4       The RFC assessment describes an adjudicator's finding about the ability of a claimant to

5   perform work-related activities.  SSR 96-5p.  The ALJ has the responsibility to make findings of

6   fact concerning a claimant's RFC based on an assessment primarily made by a medical source.

7   20 C.F.R. §§ 404.1526, 416.946.  In addition, the ALJ must consider all of the relevant evidence,

8   including medical records, lay evidence, and "'the effects of symptoms, including pain, that are

9   reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*,

10  466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-8p).

11      The RFC requires the ALJ to consider a claimant's ability to meet certain job demands,

12  such as physical demands, mental demands, sensory requirements, and other functions.  20

13  C.F.R. §§ 404.1545(a).  As such, an assessment of the claimant's exertional limitations (sitting,

14  standing, walking, lifting and carrying abilities) and non-exertional limitations (postural and

15  manipulative abilities and mental capacity) is required.  SSR 96-8p.  Social Security Ruling

16  96-8p requires the RFC to identify a claimant's functional limitations or restrictions and assess

17  his or her work-related abilities on a function-by-function basis.  This includes the functions

18  related to the claimant's physical abilities, mental abilities, and any other abilities affected by the

19  claimant's impairment or impairments.  20 C.F.R. §§ 404.1545(b)-(d); 416.945(b)-(d).  Pursuant

20  to the narrative discussion requirement provided in SSR 96-8, the RFC assessment must contain

21  a "thorough discussion and analysis" of the objective medical and other evidence, including pain,

22  and a "logical explanation of the effects of these symptoms on the individual's ability to work."

23  SSR 96-8.

24      Here, the ALJ found as follows:

25          The consultative examiner, Dr. Chang, concluded Mr. Jaime can do light work
            with no frequent bending and occasional kneeling, squatting, or climbing stairs.  The
26          state-agency medical consultant agreed Mr. Jaime can do light work with occasional
            postural activity.  Dr. Lewis, who initially treated Mr. Jaime after his May 2, 2003, back
27          injury, cleared him for work involving lifting no more than 25 pounds on May 29, 2003.
            Dr. Levy performed a neurosurgical consultation in January, 2005, and concluded there
28          was no indication for surgery based on mild to moderate chronic type degenerative

1  lumbar stenosis without acute findings.  Dr. Previte performed an agreed medical
2  evaluation in March, 2005, and concluded Mr. Jaime was precluded from very heavy
   work.  Mr. Jaime's current treating neurologist, Dr. Chauhan, also stated that work as a
3  culinary arts chef (which was described as requiring frequent lifting or carrying 20 to 25
   pounds, with occasional bending, stooping, or reaching, and frequent handling or
4  grasping) was an appropriate vocational rehabilitation goal for Mr. Jaime.  None of these
   medical opinions is inconsistent with the residual functional capacity I have assigned him.
5          A very recent "Questionnaire" from Dr. Chauhan, signed February 6, 2008,
   indicates Mr. Jaime is restricted to no more than sedentary work, can only sit four hours
6  and stand or walk three hours in an eight-hour workday, and must be allowed to alternate
   sitting and standing or walking as needed.  I have given this opinion little weight for three
7  reasons.  First, the questionnaire is very brief, consisting of a single page, and does not
   provide much detail to support Dr. Chauhan's conclusions.  In fact, instead of stating the
8  objective findings upon which he based his opinion, Dr. Chauhan cited only the
   symptoms of decreased range of motion in the cervical and lumbar spine.  Second, Dr.
9  Chauhan's responses are internally inconsistent as he first states Mr. Jaime's medical
   problems do *not* preclude him from doing sedentary work, then later limits him to three
10 hours of standing a day and four hours of sitting a day, which is less than sedentary, and
   not even eight hours total.  Finally, this questionnaire states Mr. Jaime has been disabled
11 to this degree since March 2, 2003, which directly conflicts Dr. Chauhan's own
   statement, noted above, that Mr. Jaime can do essentially light work as a culinary arts
12 chef.  Dr. Chauhan also cleared Mr. Jaime to take GED classes at adult school in
   February, 2004, and to participate in a training program for computerized embroidery in
13 July, 2004.  Neither of those acts makes any sense if Mr. Jaime cannot do even sedentary
   work.
14         Mr. Jaime's subjective statements regarding his symptoms and limitations are not
   particularly credible.  Despite his back impairment, he cleans house, sweeps, dusts, mops,
15 prepares meals, and does laundry.  He testified his doctor has recommended exercises
   which he "tries" to do, but "it's kind of hard."  He used to walk with a cane, but lost the
16 cane on the bus about five months ago and did not replace it because he was afraid Dr.
   Chauhan would get mad at him if he reported it lost.  Dr. Chauhan's records indicate Mr.
17 Jaime in fact avoided using the cane because he was embarrassed by it.  While Mr. Jaime
   testified he needs to lie down or elevate his feet during the day, Dr. Chauhan specifically
18 states Mr. Jaime does not need to lie down or elevate his legs.  Mr. Jaime also has a
   sporadic work history which further detracts from the credibility of his allegations of
19 inability to work.  Under the circumstances, Mr. Jaime's statements do not provide a
   reliable basis for imposing any further work related limitations.

20 AR 10-11, internal citations omitted.

21     Plaintiff's argument is unpersuasive.  The ALJ assessed Plaintiff's exertional limitations

22 (sitting, standing, walking, lifting and carrying abilities) and non-exertional limitations (postural

23 and manipulative abilities and mental capacity) as required.  In assessing Plaintiff's limitations,

24 the ALJ properly considered the medical opinions of six physicians: state agency consulting

25 physician Dr. Ginsburg, examining physicians Drs. Levy, Previte, and Chang, and treating

26 physicians Drs. Lewis and Chauhan.  AR 10-11.  The ALJ properly asserted that none of these

27 opinions is inconsistent with the RFC assigned to Plaintiff.  AR 11.  Thus, the ALJ's findings

28 contain a thorough discussion and analysis and a logical explanation as required by SSR 96-8.

14

1    Plaintiff contends that the ALJ relied on "dated" medical evidence in making his

2    decision.  Defendant correctly points out that these opinions occurred in 2003, 2004, 2005, and

3    2006.  Furthermore, the ALJ relied on only one opinion from 2003, which is not inconsistent

4    with his RFC finding.  AR 11.

5    In addition, the ALJ asked VE Dachelet to consider a hypothetical individual of

6    Plaintiff's age, education, and work experience, who can lift and carry 20 pounds occasionally

7    and 10 pounds frequently, stand and walk a total of six hours and sit a total of six hours in an

8    eight-hour day, occasionally climb, stoop, kneel, crouch, and crawl, and frequently balance.  AR

9    466.  These limitations are similar to Plaintiff's, as established by the medical evidence of record.

10   In sum, the ALJ did not err as alleged.  His findings are supported by substantial

11   evidence.

12   **B.**      ***Rejection of Treating Physician Dr. Chauhan's Opinion***

13   Plaintiff argues that the ALJ did not properly reject the treating source opinion.

14   Specifically, Plaintiff argues that the ALJ improperly assigned "little weight" to Dr. Chauhan's

15   questionnaire dated February 6, 2008.  Defendant argues that this assignment was warranted

16   because the questionnaire is brief, internally inconsistent, and contradictory to Dr. Chauhan's

17   prior medical opinion.

18   The opinions of treating doctors should be given more weight than the opinions of

19   doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998);

20   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating doctor's opinion is not

21   contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

22   supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating

23   doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

24   providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.*

25   (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by setting out

26   a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

27   interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

28   1989).  The ALJ must do more than offer his conclusions.  He must set forth his own

interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn*, 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not giving controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

Here, treating physician Dr. Chauhan provided several reports related to Plaintiff's ability to work. On February 10, 2004, he cleared Plaintiff to take GED classes at an adult school. AR

293.  On July 28, 2004, he cleared Plaintiff to participate in a computerized embroidery training

program.  AR 277.  On March 17, 2005, he limited Plaintiff to light work (AR 245) and

precluded him from heavy lifting and repetitive neck flexion, extension, and rotation.  AR 246.

Dr. Chauhan also considered stationary bicycling to be appropriate.  AR 247.  On August 24,

2005, Dr. Chauhan indicated that the position of "culinary arts/chef" is an appropriate vocational

rehabilitation goal for Plaintiff.  AR 235-236.  It was noted that the position of "culinary

arts/chef" requires continuous standing and walking, frequent handling and grasping, and

occasional bending, stooping, reaching, pushing, and pulling.  It also requires occasional to

frequent lifting or carrying of approximately 25 pounds.  AR 235.

More than two years later, on February 6, 2008, Dr. Chauhan completed a one-page

questionnaire.  AR 435.  On it he states that Plaintiff is not precluded from sedentary work, can

sit four hours and stand or walk three hours in an eight-hour day, does not need to lie down or

elevate his legs, and does need to alternate sitting and standing/walking as needed.  AR 435.  Dr.

Chauhan cited the objective findings leading to this opinion as decreased range of motion in the

cervical and lumbar spine.  AR 435.  Dr. Chauhan stated that Plaintiff has been disabled to this

degree since May 2, 2003.  AR 435.

The ALJ gave this questionnaire little evidentiary weight.  AR 11.  The ALJ did not

entirely reject Dr. Chauhan's opinion, as Plaintiff argues.  The ALJ relied on several other reports

issued by Dr. Chauhan.  AR 10-11.  Nevertheless, because Dr. Chauhan is a treating physician,

and because his opinion is contradicted by other physicians, the ALJ must provide specific and

legitimate reasons supported by substantial evidence in the record before rejecting a portion of

the opinion.

Here, the ALJ did so.  He found that the questionnaire was brief, lacked detail, and cited

only the symptoms of decreased range of motion in the cervical and lumbar spine rather than

objective findings as support for Dr. Chauhan's opinion.  AR 11.  The ALJ further found that the

responses on the questionnaire were inconsistent because it first states that Plaintiff is not

precluded from sedentary work, and then limits Plaintiff to four hours of sitting and three hours

of standing or walking, which is less than sedentary.  AR 11.  The ALJ further found that the

1    opinion on the questionnaire is inconsistent with Dr. Chauhan's previous reports.  AR 11.  These

2    reports clear Plaintiff for GED classes at an adult school and a computerized embroidery training

3    program.  AR 277, 293.  They also identify the position of culinary arts/chef as a physically

4    appropriate vocational rehabilitation goal.  AR 235-236.  In addition, the ALJ pointed out that the

5    questionnaire reflecting Dr. Chauhan's opinion that Plaintiff had been disabled to this degree

6    since May 2, 2003, was contradicted by the doctor's own reports.  AR 11; see also AR 435.

7         In sum, the ALJ provided specific and legitimate reasons supported by substantial

8    evidence in the record for his assignment of little weight to Dr. Chauhan's February 6, 2008

9    questionnaire.  This assignment was free of error.

10        *C.    Evaluation of Plaintiff's Testimony*

11        Plaintiff argues that the ALJ failed to properly evaluate the testimony and documentary

12   representations of record.  Specifically, Plaintiff argues that the ALJ failed to give adequate

13   reasons for rejecting Plaintiff's credibility.  Defendant argues that the ALJ properly determined

14   that Plaintiff was not credible.

15        The ALJ is required to make specific findings assessing the credibility of plaintiff's

16   subjective complaints.  *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738

17   (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other

18   non-exertional impairment," *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).  In rejecting the

19   complainant's testimony, "the ALJ must identify what testimony is not credible and what

20   evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d at 834 (quoting

21   *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant

22   to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain

23   and impairments is unreliable, the ALJ must make a credibility determination with findings

24   sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

25   claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d at 958.  "The ALJ may consider at least the

26   following factors when weighing the claimant's credibility: '[claimant's] reputation for

27   truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

28   conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

18

1   parties concerning the nature, severity, and effect of the symptoms of which [claimant]

2   complains." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). "If the

3   ALJ's credibility finding is supported by substantial evidence in the record, we may not engage

4   in second-guessing." *Id.*

5       Here, the ALJ relied on six factors in finding that the Plaintiff's subjective statements

6   regarding his symptoms and limitations were not credible: (1) despite Plaintiff's back

7   impairment, he cleans house, sweeps, dusts, mops, prepares meals, and does laundry; (2) that

8   Plaintiff tried to do doctor-recommended exercises but stated "it's kind of hard"; (3) that Plaintiff

9   used to walk with a cane but lost it about five months ago and has not replaced it; (4) that Dr.

10  Chauhan reported that Plaintiff does not use his cane very much because it is embarrassing; (5)

11  that Plaintiff testified he needs to lie down and elevate his legs but Dr. Chauhan reported that he

12  does not need to do this; and (6) Plaintiff has a sporadic work history.  AR 11; see also AR 92,

13  127-134, 252, 435, 453, 456-457.

14      Evidence of a claimant's daily activities may be relevant to evaluating the credibility of a

15  claimant's pain testimony.  See SSR 96-7p; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In

16  order to be sufficiently specific, clear and convincing to meet the standard for disregarding pain

17  testimony, however, such evidence must show that "a claimant is able to spend a substantial part

18  of his day engaged in pursuits involving the performance of physical functions that are

19  transferable to a work setting." *Fair v. Bowen*, 885 F.2d at 603.  Here, the ALJ found Plaintiff's

20  statements not credible because he engaged in cleaning, sweeping, dusting, mopping, preparing

21  meals, and doing laundry.  AR 11.  "An ALJ is clearly allowed to consider the ability to perform

22  household chores...for excessive pain." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1994)

23  (ALJ's finding that Plaintiff's complaints of pain were not credible was affirmed where Plaintiff

24  performed various household chores such as cooking, doing the dishes, and going to the store).

25      The ALJ offered five additional reasons for finding Plaintiff not credible, identifying the

26  portions of Plaintiff's testimony that were not credible and identifying the evidence that

27  undermines the Plaintiff's complaints.  The ALJ did not arbitrarily discredit Plaintiff's testimony.

28

1    Thus, the Court finds that the ALJ's credibility assessment is supported by clear and convincing

2    reasons, and therefore, is free of error.

3         **D.      *Mental Health Record***

4         Plaintiff argues that the ALJ did not properly develop the mental health record.

5    Specifically, Plaintiff argues that there was evidence of anxiety which the ALJ was required to

6    develop.  Defendant argues that the ALJ properly developed the record and that there was no

7    diagnosis of a mental health impairment.

8         In general, it is the duty of the claimant to prove to the ALJ that she is disabled.  20

9    C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports

10   a disability determination, including medical or other evidence relating to the alleged impairment

11   and its effect on her ability to work.  *Id*.  For his part, the ALJ has the responsibility to develop "a

12   complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical

13   reports." 20 C.F.R. § 404.1512(d).  If this information fails to provide a sufficient basis for

14   making a disability determination, or the evidence conflicts to the extent that the ALJ cannot

15   reach a conclusion, he may seek additional evidence from other sources.  20 C.F.R. §§

16   404.1512(e); 404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir. 2001).

17        However, the ALJ's obligation to obtain additional evidence is triggered only "when the

18   evidence from the treating medical source is inadequate to make a determination as to the

19   claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tonapetyan v.

20   Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to

21   develop the record when the evidence is ambiguous or "the record is inadequate" to allow for

22   proper evaluation of the evidence).  When the ALJ finds support in the record adequate to make a

23   determination regarding the claimant's disability, he does not have a duty to contact the doctors."

24   *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

25        Here, there is no diagnosis in the record of a mental health impairment from a treating

26   medical source.  While Plaintiff was seen for a situational anxiety attack on July 20, 2004, no

27   diagnosis of a mental impairment resulted.  AR 378-382.  The medical record is devoid of any

28   mental health treating source.  In addition, Plaintiff himself reported on May 12, 2006 that he had

20

1  no severe psychological problems and had no recent or current mental health treatments.  AR 15.

2  Clearly, the ALJ found that the medical evidence in the record was adequate to make a

3  determination as to the claimant's disability.   Thus, the ALJ had no duty to develop the record

4  with regard to Plaintiff's mental health.

5  ## CONCLUSION

6       Based on the foregoing, the Court finds that the ALJ's decision is supported by

7  substantial evidence in the record as a whole and is based on proper legal standards.

8  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

9  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

10  favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

11  Juan Jose Jaime.

12       IT IS SO ORDERED.

13  **Dated:**   **June 1, 2010**          _____/s/ **Gary S. Austin**_____

14                        UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28